IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARITY SHAMP,

                Plaintiff,

v.                                                                           OPINION and ORDER

FRANK BISIGNANO,[1]                                      24-cv-516-jdp
Commissioner of the Social Security Administration,

                Defendant.

---

      Plaintiff Charity Shamp seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Shamp was not disabled within the meaning of the Social Security Act. Shamp has multiple medical conditions, which she says limit her ability to sit for prolonged periods and require her to elevate her legs for portions of the workday. Shamp contends that administrative law judge (ALJ) Michael Schaefer failed to adequately account for her physical limitations when he determined her residual functional capacity (RFC). The court concludes that the ALJ failed to draw a logical connection between the medical evidence and his decision not to include a leg-elevation restriction in Shamp's RFC, so the court will remand for further proceedings on that issue. But Shamp has not shown that the ALJ otherwise erred in his assessment of her physical limitations.

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

BACKGROUND

Shamp applied for disability benefits, alleging disability beginning in August 2020. R. 18.[2] In a February 2024 decision, the ALJ found that Shamp suffered from the following severe impairments: Guillain-Barre syndrome, polyneuropathy, lumbar-spine disorder with radiculopathy, left-hip osteoarthritis, and morbid obesity. R. 21. The ALJ found that Shamp had the RFC to perform sedentary work with several restrictions:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following restrictions: She can occasionally climb ramps or stairs. She can occasionally balance, stoop, kneel crouch, or crawl. She can never climb ladders, ropes, or scaffold. She can frequently handle or finger with the bilateral upper extremities. She must avoid concentrated exposure to extremes of cold, heat, wetness, or humidity. She must avoid concentrated exposure to atmospheric conditions, including fumes, odors, dusts, or gases, or poorly ventilated areas. She must avoid even moderate exposure to workplace hazards, including moving machinery and unprotected heights. Due to physical impairments and symptoms, she can work in an environment with no fast-paced production quotas or rates. Any production requirements should be more goal-oriented, such as those based on daily, weekly, or monthly quotas.

R. 25. The ALJ determined that Shamp could not perform her past relevant work as an office clerk and in retail. R. 29. But relying on the testimony of a vocational expert, the ALJ found that Shamp was not disabled because she could perform jobs that are available in significant numbers in the national economy, such as food checker and telephone solicitor. R. 30.

Shamp now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial

---

[2] Record cites are to the administrative transcript located at Dkt. 5.

evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Shamp raises three issues on appeal, all based on a contention that the ALJ failed to articulate his reasoning for the restrictions he did and did not include in Shamp's RFC. Specifically, Shamp says that the ALJ (1) failed to account for Shamp's need to elevate her legs throughout the workday; (2) ignored evidence that Shamp was unable to sit for prolonged periods; and (3) failed to explain why he restricted Shamp to "no fast-paced production quotas or rates." The court concludes that the ALJ's inadequate explanation of the leg-elevation issue requires a remand, but that his handling of the other two issues was adequate.

1. **Leg elevation**

Shamp suffers from lower-extremity edema, which her doctors have treated at various times by having Shamp elevate her legs throughout the day, wear compression stockings, and take furosemide, a diuretic medication. R. 792; 918; 1078. In an August 2023 opinion, Shamp's treating provider Benjamin Chao wrote that Shamp would need to elevate her legs at least one hour and forty minutes during an eight-hour workday to manage her edema. R. 1094–95. But the ALJ found Chao's opinion unpersuasive and declined to include a leg elevation restriction in Shamp's RFC. The ALJ reasoned:

> To support his espoused restrictions, Dr. Chao repeatedly refers to his treatment notes from August 2, 2023. Records from this

3

> date pertain to the claimant's acute bilateral lower-extremity edema. However, the rest of the medical evidence does not sufficiently support this. Notably, Dr. Chao's examination notes from August 2, 2023 are one of the very few treatment notes that references lower-extremity edema and documents the first time the claimant received furosemide to treat this impairment.

R. 28. Shamp contends that the ALJ's reason for discounting Chao's opinion regarding her need to elevate her legs is illogical and unsupported by the record.

The court concludes that remand is necessary on this issue. The ALJ appears to be saying that the edema Chao observed on August 2, 2023, was a short-term problem and thus unhelpful to evaluate Shamp's functional abilities more generally. But the record doesn't support a finding that the edema on August 2 was a short-term problem. As Shamp points out in her brief, the record contains at least three other treatment notes in which a provider observed swelling in Shamp's legs. In September 2021, Shamp presented to the emergency department with complaints of right leg pain and swelling; on examination, the provider noted a "mild to moderate size effusion" in Shamp's right knee and prescribed rest, ice, and pain medication. R. 793–96. In July 2022, Shamp presented to urgent care with leg and back pain; the provider observed mild lower-extremity edema and recommended that Shamp use compression stockings. R. 917–18. And in July 2023, Shamp presented to the emergency room reporting swelling and a feeling that her legs were about to "burst;" the emergency room provider observed lower-extremity edema and recommended follow-up with primary-care. R. 1066. Shamp followed up with Chao at the August 2 visit described by the ALJ; at that visit, Chao observed moderate bilateral lower-extremity edema and prescribed furosemide, leg elevation, a low-salt diet, and weight loss. R. 1078. The ALJ does not grapple with these records in his decision; his explanation that edema appears in only "very few" treatment notes is inconsistent with a record showing a multi-year history of edema that was worsening in severity over time.

4

2. **Sitting**

The ALJ's finding that Shamp could perform sedentary work included an implicit finding that Shamp could sit for six hours of an eight-hour workday. See SSR 96-9p; *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). In reaching this finding, the ALJ discounted Shamp's testimony at the administrative hearing that she couldn't sit for more than fifteen minutes a time without experiencing numbness and sciatic pain. R. 60–61. The ALJ also found unpersuasive Chao's opinion that Shamp could sit for only fifteen to twenty minutes a time. R. 1094–95. Shamp contends that the ALJ failed to adequately articulate his reasoning for discounting the evidence of her inability to sit for prolonged periods.

The ALJ gave three reasons for discounting Shamp's professed inability to sit. First, Shamp received only conservative treatment for her back pain and hip osteoarthritis, and at one point, she declined more aggressive treatment because she thought it was unnecessary. R 22; 27 (citing R. 886, December 2022 treatment note that Shamp "did not complete PT; feels that at this time there is no need for it"). Second, Shamp demonstrated normal gait, range of motion, strength, and sensation during various medical examinations between 2020 and 2023. R. 27. Third, Shamp travelled to Las Vegas in September 2021 to get married and used marijuana four times per week, activities which according to the ALJ, "diminish [Shamp's] contention of disability," R. 27.

The ALJ's second and third reasons are difficult to follow. Medical examinations or daily activities inconsistent with a claimant's reported limitations are generally valid reasons for declining to credit subjective symptoms or a medical opinion. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023); *Baptist v. Kijakazi*, 74 F.4th 437, 445 (7th Cir. 2023); *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). But the ALJ in this case provided only conclusory

5

explanations for why he believed Shamp's medical examinations and activities were inconsistent with her reported inability to sit. It is not clear that the ALJ built the requisite logical bridge connecting the evidence and his conclusion.

In any event, the court need not decide whether the ALJ's second and third reasons are sufficient because Shamp's treatment history is an independently sufficient reason for the ALJ to discount her subjective report of difficulty sitting. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (not all the ALJ's reasons need survive scrutiny so long as some of them do). In evaluating the extent of a claimant's functional limitations, an ALJ is entitled to consider whether a claimant has received only conservative treatment and whether a claimant has refused recommended treatment. *Simila v. Astrue*, 573 F.3d 503 (7th Cir. 2009); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015). Here, the ALJ reasoned that Shamp's history of treating her back pain with only medication, and her rejection of physical therapy as unnecessary, were inconsistent with her reports of back pain so severe that she could not sit for more than fifteen minutes. This is a sufficient reason for the ALJ to discount Shamp's subjective report of her inability to sit, so the commissioner's decision on this issue is affirmed.

### 3. Production quotas

Shamp's final contention is that the ALJ erred by restricting her to environments without fast-paced production quotas or rates and requiring instead that any quotas be "more goal-oriented, such as those based on daily, weekly, or monthly quotas." R. 25. Shamp says that the ALJ failed to articulate his reasons for this restriction. Shamp's arguments on this issue are brief and unpersuasive. Her fundamental problem is that she fails to point to any evidence in the record indicating greater limitations than what ALJ found. Neither Chao nor the state-agency doctor who evaluated Shamp's records opined that she needed any restrictions on

the pace of her work. "There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ." *Best v. Berryhill*, 730 Fed. App'x 380, 382 (7th Cir. 2018) (internal quotation marks and alterations omitted). The commissioner's decision on the production quota issue is affirmed.

ORDER

IT IS ORDERED that that the decision denying disability benefits to plaintiff Charity Shamp is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered October 28, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge